Lando Products, Inc., a corporation v. Commissioner.
Lando Products, Inc. v. Commissioner
Docket No. 61311.
United States Tax Court
T.C. Memo 1958-122; 1958 Tax Ct. Memo LEXIS 106; 17 T.C.M. (CCH) 652; T.C.M. (RIA) 58122; June 27, 1958
*106 Paul E. Anderson, Esq., for the petitioner. Edward H. Boyle, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of petitioner for the fiscal year ended July 31, 1951, in the amount of $36,193.25. The issue presented is whether the sum of $91,962.62 paid or credited by petitioner to its president, Ellis A. Lando, in the fiscal year ended July 31, 1951, as compensation is reasonable within the meaning of section 23(a)(1)(A), Internal Revenue Code of 1939. Findings of Fact The stipulated facts are found accordingly. Petitioner is a California corporation having its principal place of business at Sausalito, California. It was incorporated on July 31, 1946. It filed its income tax return for the period involved with the director of internal revenue at San Francisco, California. It reported its income on an accrual method of accounting on a fiscal year ended July 31st. The petitioner succeeded a community sole proprietorship of Ellis A. Lando and Eunice Lando, his wife. On August 1, 1946, petitioner acquired the assets subject to liabilities of the sole proprietorship in exchange for common *107 stock in the amount of $20,000 and a note of $31,858.20, which represented the book value of the business. The principal business of petitioner was and is the manufacture and sale of painted aluminum strip for venetian blinds. At all times material hereto, Lando was the president, and his wife, Eunice, was secretary of petitioner. They, together with Mark Hardin, an attorney, who was not a stockholder, constituted its board of directors. During the same period Lando and his wife never owned less than 96 per cent of petitioner's capital stock. From the time of its incorporation through the fiscal year ended July 31, 1955, the petitioner did not declare or pay any dividends. Lando first entered the window blind business in 1921 as an employee of the National Window Shade Company. In 1922 he opened his own business. In 1923 or 1924, he began handling venetian blinds, using wooden slats manufactured by others, and in 1938 used steel or metal slats. In the period 1938-1940, he experimented with aluminum slats. At the onset of World War II, the business was suspended. After the war Lando recommenced his business, first as a distributor for Hunter-Douglas Corporation and then on *108 an independent basis. In the period of seven months in 1946 he earned $36,670 from the operation of his business as sole proprietor. Lando was recognized in the venetian blind industry as a top production and sales executive, and was one of the founders of the venetian blind industry, and had been called in from time to time as a consultant by other firms. As petitioner's chief executive, Lando was responsible for the purchases and sales, the employment and training of personnel, the financing, and general supervision of the business. In the taxable period involved, Lando took no vacation and his ordinary work week consisted of 14 to 16 hours per day, six to seven days a week. During the fiscal years 1947 to 1950, inclusive, Lando was paid no stated salary as president of petitioner, but its board of directors fixed his compensation at the end of each fiscal year at four per cent of gross sales. At a special meeting of petitioner's board of directors held on March 19, 1951, relating to Lando's compensation, the following resolution was adopted: "WHEREAS, the President has continued to expend his efforts and ingenuity for the welfare of this corporation, and "WHEREAS, the *109 President of this corporation works without regular compensation, and "WHEREAS, heretofore, the President of this corporation has been given a sum equal to four percent of the gross sales of this corporation as compensation for his efforts on its behalf; "NOW, THEREFORE, BE IT RESOLVED: "That the President of this corporation be given a sum equal to four percent of the gross sales of this corporation, as compensation for his efforts on behalf of this corporation, for that period of the year commencing August 1st, 1950 and ending March 31st, 1951, which said gross sales shall be of the same period. "BE IT FURTHER RESOLVED: That for the period from March 31st, 1951, to and including the end of the fiscal year of this corporation, to wit: July 31st, 1951, the President of this corporation be paid a monthly salary of $4,166.66. "BE IT FURTHER RESOLVED: That the sums herein voted to be paid to the President as and for his compensation, can be paid to him at any time after the ending of the fiscal year of the corporation." The total compensation actually paid to Lando by petitioner for the fiscal year ended July 31, 1951, the year in question, was $91,962.62. Due to an error *110 in bookkeeping, the gross sales were overstated by $103,577.32. It is stipulated that the correct amount of compensation for the fiscal year ended July 31, 1951, authorized to be paid to Lando was $87,819.32. On April 1, 1951, petitioner discontinued its sales activities and entered into an arrangement with Plastic Lume, Inc., to distribute its products, and after that date all of petitioner's production was sold to that corporation. Plastic Lume, Inc., was organized by Lando and all of its capital stock has been owned by Lando and his wife, Eunice, during the periods material herein. In 1946, petitioner had 12 employees. During the fiscal year 1951 it had 53 employees. In 1951 petitioner had a sales division with a sales manager and two salesmen. Petitioner paid a salary to Eunice Lando of $3,600 for the fiscal year ended July 31, 1947; $4,800 for the fiscal years ended July 31, 1948 through 1950, and $5,200 for the fiscal year ended July 31, 1951. The gross income, net income before and after deducting the amounts paid to Lando, and the amount paid to Lando for each of the fiscal years ended July 31, 1947, through July 31, 1955, inclusive, are shown in the following schedule: *111 F/Y ended
Gross
Net Income before
Payment to
July 31
Income
Payment to Lando
Lando
Net Income
1947
$ 534,978.67
$ 52,139.61
$21,399.15
$ 30,740.46
1948
727,464.02
84,777.55
29,277.68
55,499.87
1949
792,208.52
53,217.97
31,688.34
21,529.63
1950
1,065,536.10
161,744.68
42,368.80
119,375.88
1951
2,267,896.54
532,929.03
91,962.62
440,966.41
1952
1,484,334.00
92,040.38
36,000.00
56,040.38
1953
1,442,138.52
85,869.31
36,000.00
49,969.31
1954
1,326,796.09
26,883.51
36,000.00
( 9,116.49)
1955
1,619,708.37
85,677.19
36,000.00
49,677.19
The surplus of the corporation as shown on its Federal income tax returns and the Federal income and excess profits taxes paid for the fiscal years ended July 31, 1947 through July 31, 1955, were as follows: Federal Income &
F/Y ended
Excess Profits
July 31
Surplus
Taxes Paid
1947
$ 21,752.51
$ 8,792.44
1948
54,609.19
21,036.61
1949
72,057.24
4,882.41
1950
137,768.59
46,391.14
1951
230,595.01
274,233.50
1952
311,073.30
23,641.00
1953
341,325.65
20,484.04
1954
331,535.49
( 4,740.58)
1955
356,063.96
20,332.14
The following is *112 the balance sheet of petitioner for the taxable year ended July 31, 1951: Beginning of
End of Fiscal
ASSETS
Fiscal Year
Year
Cash
$ 62,514.32
$ 32,018.80
Accounts receivable
$102,400.91
$169,356.93
Less: Reserve for bad debts
2,466.60
99,934.31
2,506.85
166,850.08
Notes receivable
52.50
9,647.50
Inventories
159,954.41
657,718.81
Scrap inventory
1,826.21
3,748.77
Depreciable assets
$121,354.35
$183,151.87
Less: Reserve for depreci-
ation
30,679.39
90,674.96
48,814.23
134,337.64
Equipment under construction
10,096.64
840.77
Prepaid expenses
4,310.74
9,954.45
$429,364.09
$1,015,116.82
LIABILITIES
Accounts payable
$ 78,843.23
$ 121,715.12
Accrued interest
573.29
Accrued wages
47,168.80
97,162.62
Accrued payroll, withholding and sales
taxes
2,289.91
2,953.68
Accrued income taxes
46,011.41
347,127.92
Notes payable
97,282.15
194,989.18
Capital stock
20,000.00
20,000.00
Surplus
137,768.59
230,595.01
$429,364.09
$1,015,116.82
During the fiscal year 1951 petitioner was operating at capacity and was enjoying a seller's *113 market as a result of the Korean War. Petitioner was selling its product at better prices than were contracted for prior to that fiscal year. The Hunter-Douglas Corporation was a competitor of petitioner in the manufacture and sale of aluminum coil stock for venetian blinds. However, it sold, in addition, plastic venetian blind tape, venetian blind hardware, headrails and bottom rails, which products were not handled by petitioner. The Hunter-Douglas Corporation operated both a Delaware corporation and a New York corporation. Its gross sales in 1951 were approximately one million dollars a month. It paid its five vice-presidents a fixed salary and a bonus of 1 1/2 per cent of net income. The net income of the Hunter-Douglas Corporation was not disclosed. Edwin J. Hunter, a witness on behalf of petitioner, was a vice-president of Hunter-Douglas Corporation in charge of engineering and production in 1951. His total compensation received from both the Delaware and New York corporations was $53,000 in the year 1951. In its return for the fiscal year ended July 31, 1951, petitioner claimed a deduction of $91,962.62 for compensation paid to Lando. In the deficiency notice the respondent *114 disallowed a portion of the claimed deduction with the following explanation: "It has been determined that reasonable compensation for services actually rendered by him was $36,000. The remainder of $55,962.62 is disallowed as a deduction in computing net income, it being a distribution of earnings and profits for which no deduction is allowable under the Internal Revenue Code of 1939." A reasonable compensation for services actually rendered by Ellis A. Lando to petitioner in the taxable year ended July 31, 1951, is the sum of $53,000. Opinion LEMIRE, Judge: The controverted deficiency results from the respondent's disallowance of a portion of the amount claimed by petitioner as compensation paid to its president, Ellis A. Lando, for services rendered in the taxable year ended July 31, 1951. What constitutes reasonable compensation for services rendered to qualify as a deduction under section 23(a)(1)(A) of the Internal Revenue Code of 1939, presents a factual question. Gem Jewelry Co., Inc., v. Commissioner, 165 Fed. (2d) 991, certiorari denied 334 U.S. 846; Levine & Bros., Inc., v. Commissioner, 101 Fed. (2d) 391. The stockholding *115 situation existing here requires the closest scrutiny. Kerrigan Iron Works, Inc., 17 T.C. 566, 572; Barto Co., 21 B.T.A. 1197. While each case must be resolved upon its own particular facts and circumstances, certain basic factors are recognized as guides in a consideration of the entire situation. Mayson Mfg. Co. v. Commissioner, 178 Fed. (2d) 115. The record establishes that Lando was a competent, well qualified executive, and an acknowledged leader in the venetian blind industry. He made the purchases and sales, and had supervision of the plant and its equipment. Lando had charge of the financing arrangements, devoted all his time to the business, and its success was due to his ingenuity and ability to produce a competitive product efficiently at low cost. It is apparent that the large increase in gross sales in the taxable year in question was due somewhat to the impetus of the Korean War which created a seller's market and generally improved economic conditions. Nevertheless, the war imposed greater responsibility upon Lando and justified increased compensation for the services which he rendered to the petitioner. The petitioner's *116 board of directors consisted of Lando and his wife, who together owned 96 per cent of petitioner's capital stock, and Mark Hardin, an attorney, who was not a stockholder. Under such circumstnaces it cannot be said that the action of the directors was the result of an arm's-length transaction. Hence, the presumption usually accorded the judgment of the board of directors is of negligible weight. Except in the taxable year 1951, when Lando's compensation was fixed after the lapse of eight months, the directors had fixed the compensation of Lando at the end of each fiscal year when the result of operations was known. The further fact that the directors did not declare or pay any dividends during the period 1947 to 1951, inclusive, although petitioner had accumulated a large earned surplus, indicates the directors were not solely concerned with fixing reasonable compensation for the services actually rendered by Lando. Petitioner contends that Lando's compensation paid in prior years was not adequate for the services he rendered, and that the directors took that fact into consideration in fixing his compensation for the fiscal year 1951. The fact that the minutes of the special meeting *117 of the directors held in March 1951, contain no indication that they were making any adjustment for prior years, demonstrates the weakness of such a contention. Petitioner also argues that Lando's compensation was contingent and where the compensation was on a contingent basis, it has been held to be reasonable even though it is in excess of what would ordinarily be paid for such services. Conceding the premise, the argument is without significance under the circumstances here existing; the compensation of Lando was fixed at the end of the year and therefore was not contingent. Petitioner has presented the testimony of Edwin J. Hunter, a vice-president of the Hunter-Douglas Corporation, upon the theory that that corporation was a competitor of petitioner and is a comparable corporation. Under the circumstances disclosed by this record, evidence of what a comparable company paid for similar services would be most persuasive upon the question of reasonableness. While the Hunter-Douglas Corporation manufactured and sold aluminum venetian blind coil slats in competition with petitioner, it sold a number of other products not handled by petitioner. Hunter testified that his salary *118 for 1951 as a vice-president of the Hunter-Douglas Corporation was $53,000 in 1951 which was received from two corporations operated by Hunter-Douglas Corporation. Hunter received a fixed salary of $24,000 a year plus a bonus of 1 1/2 per cent of the net income. He testified that the Hunter-Douglas Corporation had gross sales of approximately one million dollars a month, but did not reveal its net income in 1951. Hunter did not produce any records or any schedules from the books of the Hunter-Douglas Corporation. The meager and general testimony of Hunter does not satisfy us that petitioner was a comparable company to the Hunter-Douglas Corporation in the taxable year involved. Hunter further testified that he had no knowledge as to the salaries paid by other competitive concerns to their officers. In answer to a hypothetical question as to what salary Lando would have drawn if the petitioner was amalgamated with the Hunter-Douglas Corporation, Hunter expressed the opinion that he would received about $105,000 a year. It is obvious that the compensation paid to the officers of the Hunter-Douglas Corporation was on a contingent basis and we find Hunter's testimony of little assistance *119 to the Court. Upon a consideration of the entire record, and giving due weight to the various factors having a bearing upon the question of the reasonableness of compensation paid for services rendered, we hold that a reasonable compensation for services rendered by Lando to the petitioner in the taxable year ended July 31, 1951, is the amount of $53,000, and we have so found as an ultimate fact. Decision will be entered under Rule 50.